UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRIE HOLT, et al., | No. 2:13-cv-00635 KJM DAD |
| Plaintiffs, | |
| v. | ORDER |
| AT&T, INC., | |
| Defendant. | |

The parties appeared on August 22, 2014 for argument on defendant's motion for summary judgment. Xavier Villegas appeared for plaintiffs Sherrie Holt, Elvira Anderson, Marlene Mattsson, Kathy Connors, and Alana Keel (collectively "plaintiffs"); Adam Bouayad appeared for defendant AT&T, Inc. (AT&T or defendant). After considering the parties' arguments, the court GRANTS the motion for summary judgment.

I. BACKGROUND

On April 1, 2013, plaintiffs filed a complaint alleging generally they worked selling advertisements for AT&T at a facility in Gold River; the members of their work group were generally over forty years of age; AT&T announced it was closing the Gold River office and centralizing operations in Pleasanton; although AT&T directed plaintiffs to report to Pleasanton, they had already hired younger workers for that facility; AT&T told plaintiffs if they chose not to relocate, their choice would be a voluntary termination. The complaint contains three claims: (1)

1

a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.*; (2) a violation of California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12940, *et seq.*; and (3) a violation of California's WARN Act, Cal. Labor Code §§ 1400, *et seq.* ECF No. 2.

Defendant filed its motion for summary judgment on July 25, 2014, arguing that the ADEA and FEHA claims are barred because of plaintiffs' failure timely to exhaust administrative remedies and plaintiffs received all the protections of the WARN Act. It also argues AT&T was not plaintiffs' employer because it is merely a holding company. The court does not address the latter argument, as it finds plaintiffs have not shown they timely exhausted their state and federal age discrimination claims or that they were denied the protections of the WARN Act.

II.   STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

2

nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010).

III. UNDISPUTED FACTS

In March 2010, plaintiffs were employed as telephone sales representatives in Pacific Bell Directory's Gold River Office. Decl. of Stephen Donovan, Ex. 45 (Donovan Decl.) ¶ 3. They were all members of IBEW Union Local 1269. Decl. of Jon Irelan, Ex. 53 (Irelan Decl.) ¶¶ 5-6.

The Directory decided to consolidate the sales representatives into two offices, one in Costa Mesa and one in Pleasanton. Donovan Decl. ¶ 3. On March 2, 2010, plaintiffs

1  received a notice that their positions were being relocated to Pleasanton effective May 24, 2010.

2  Donovan Decl. ¶¶ 6-7 & Sub. Ex. A (Notice of Relocation); Dep. of Sherrie Holt, Ex. 46 at

3  2:20-3:11; Dep. of Elvira Anderson, Ex. 47 at 2:19-4:9; Dep. of Marlene Mattsson, Ex. 48 at

4  2:3-9; Dep. of Kathy Connors, Ex. 49 at 3:20-4:11; Dep. of Alana Keel, Ex. 50 at 4:10-25.  This

5  notice said in pertinent part that "the business is centralizing all telephone sales activities in the

6  Sacramento office into one site at the Pleasanton office.  Your job is among those affected.  You

7  are to report to this office on Monday, May 24, 2010. . . . [¶] . . . [I]f you have not secured another

8  position by May 24, 2010, your employment will end as of that date.  [¶] By April 2, 2010, please

9  notify Stephen Donovan in Labor Relations regarding your intent to move to Pleasanton . . . .

10  The fax number is (415) 979-0720."  Donovan Decl., Sub. Ex. A.

11       On March 23, 2010, the company sent plaintiffs a written notice, offering them an

12  "early termination option" and stating that employees who did not wish to move to the Pleasanton

13  office could leave the business on April 16, 2010 and receive a payment equivalent to the number

14  of work days between April 16 and May 21, 2010.  Donovan Decl. ¶ 8 & Sub. Ex. B.  Holt,

15  Anderson, Mattsson, and Connors elected to accept the early departure option rather than relocate

16  to Pleasanton and received all their wages through May 21, 2010.  Holt Dep. at 4:4-10, 5:6-6:4 &

17  Ex. 23; Anderson Dep. at 7:1-15, 9:11-10:1 & Ex. 10; Mattsson Dep. at 4:1-12, 6:6-15, 7:4-25 &

18  Ex. 15; Connors Dep. at 7:14-23, 12:18-19, 13:1-7 & Ex. 3.  Keel elected not to relocate, but

19  continued to work at Gold River until May 21, 2010.  Keel Dep. at 8:8-9:2, 19:25-20:2.

20       Although none of the plaintiffs filed an age discrimination complaint directly with

21  the Equal Employment Opportunity Commission (EEOC), they each filed a claim with

22  California's Department of Fair Employment and Housing (DFEH) in the spring of 2013.  Decl.

23  of Adam Bouayad, Ex. 51 & Sub. Exs. A-H; Holt Dep. at 12:23-13:21 & Ex. 26; Anderson Dep.

24  at 13:21-14:20 & Ex. 13; Mattsson Dep. at 9:5-10:1 & Ex. 18; Connors Dep. at 19:7-13 & Ex. 7;

25  Keel Dep. at 28:4-30:6 & Ex. 36.

26  /////

27  /////

28  /////

4

IV. ANALYSIS

  A.  ADEA and FEHA Age Discrimination Claims

  Defendant argues plaintiffs' state and federal age discrimination claims are barred because they did not file an administrative claim with the EEOC and did not timely file their claim with the DFEH, which means there was no timely exhaustion.

  Plaintiffs argue their filing with DFEH serves to exhaust both ADEA and FEHA claims and they are entitled to equitable tolling because they were pursuing other remedies.

  In reply defendant says that even if equitable tolling applies plaintiffs have presented no evidence supporting their claimed pursuit of other remedies.

  Before pursuing an ADEA claim, a plaintiff must wait for at least sixty days after filing an age discrimination complaint with either the EEOC or DFEH.  *Funk v. Sperry Corp*., 842 F.2d 1129, 1134 (9th Cir. 1988); *Dempsey v. Pac. Bell Co*., 789 F.2d 1451, 1452 (9th Cir. 1986).  Because of the work-sharing agreement between the EEOC and DFEH, a claim filed with DFEH is deemed filed with the EEOC as of that date.  *McConnell v. Gen. Tel. Co. of Ca*., 814 F.2d 1311, 1316 (9th Cir. 1987); 29 C.F.R. §1626.10(c).  The worksharing agreement means California is a "deferral state[,]. . . one to which the EEOC has agreed to defer cases for preliminary investigation."  *Id*.  In a deferral state, a plaintiff must file the age discrimination claim with DFEH within 300 days of the alleged unlawful practice.  *Haynes v. City & Cnty. of San Francisco*, No. C-07-00691 MHP, 2008 WL 60404, at *2 (N.D. Cal. 2008); 29 U.S.C. § 626(d)(1)(A)-(B).

  Similarly, a worker pursuing an age discrimination charge under FEHA must also exhaust administrative remedies by filing a claim with DFEH within one year of the alleged unlawful practice and then obtain a right to sue letter.  *Romano v. Rockwell Int'l*, 14 Cal. 4th 479, 491 (1996); *Tapia v. Artistree, Inc*., No. CV-14–01381 DDP (ASx), 2014 WL 1402306, at *2 (N.D. Cal. Apr. 10, 2014); Cal. Civ. Code § 12960(d).  Plaintiffs' complaints, filed with DFEH in 2013, are not timely.

  Plaintiffs argue the time limits were tolled by their pursuit of wage claims against their employer.  ECF No. 28 at 7.  In *McDonald v. Antelope Community College District*, the

California Supreme Court said that an employee's pursuit of the college's internal grievance procedure could support equitable tolling of the FEHA statute of limitations. 45 Cal. 4th 88, 111 (2008). The Ninth Circuit also recognizes equitable tolling of the ADEA time limits, not for pursuing other remedies, but when the plaintiff shows "'excusable ignorance of the limitations period and . . . lack of prejudice to the defendant.'" *Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007) (quoting *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981)); *see Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) (holding that pursuit of internal grievance did not toll limitations period for filing Title VII claim with EEOC).

The problem with plaintiffs' position is that it is not supported by any evidence that they pursued another claim against their employer or were ignorant of the limitations period. Defendant has presented evidence that plaintiffs did not timely file their ADEA and FEHA claims, but plaintiffs have responded only with argument. This is not sufficient to defeat summary judgment. *Lane v. Dept. of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (stating that allegations in the complaint and attorney's statements at oral argument insufficient to defeat summary judgment).

At the hearing on the motion, plaintiffs' counsel proffered a box of materials, saying the evidence demonstrating plaintiffs' pursuit of other remedies had just recently been retrieved from storage. Counsel did not say exactly when he located the information or what was in the box, and he conceded he had not told opposing counsel about it, not even as they waited for the case to be called. *Olson v. Beck*, No. C–06–07487 JCS, 2011 WL 4634026, at *1-2 (N.D. Cal. Oct. 5, 2011) (stating that filing a supplemental brief and declaration at 5 p.m. the day before a hearing on a summary judgment motion was inexcusable).

Moreover, plaintiffs mentioned the pursuit of the other remedies in their opposition and yet did not seek to postpone the summary judgment proceedings to allow them time to secure the supporting materials. *See* Fed. R. Civ. P. 56(d). Neither their argument nor their last minute proffer of materials neither described nor examined is sufficient to defeat summary judgment of the ADEA and FEHA claims.

/////

6

B.  WARN Act

California's Worker Adjustment and Retraining Notification Act, or WARN Act, provides "an employer may not order a mass . . . relocation . . . unless, 60 days before the order takes effect, the employer gives written notice" to the employees. *MacIssac v. Waste Mgmt. Collection & Recycling*, 134 Cal. App. 4th 1076, 1078 (2005). A "relocation" is the removal of all or substantially all of operations to a different location more than 100 miles away. Cal. Labor Code § 1400(e). The employer is liable for back pay and the cost of any benefits if it fails to give the required notice. Cal. Labor Code § 1402(a).

Defendant notes the plaintiffs acknowledged receiving the March 2, 2010 letter notifying them of the mass relocation to take effect on May 24, more than eighty days later. ECF No. 25 at 17. It notes that even if the later letter of March 23, discussing the early departure option, is deemed notice, it is nevertheless timely, as there are more than sixty days between these two dates. *Id*. at 23. It also argues there is no prejudice because plaintiffs acknowledged being paid and receiving benefits even when they took the early departure option. *Id*. at 18-19.

Plaintiffs argue only that they acknowledged receiving certain communications from their employer, not that they received proper notice of the relocation. ECF No. 28 at 9. At hearing plaintiffs' counsel said the contents of the notice are key, but did not specifically identify deficiencies, apart from the fact that the notice did not inform the employees of the distance between the Gold River and Pleasanton locations. Plaintiff's counsel did concede the March 23 notice was timely, but said it was also deficient.

Defendant argued the distance between the two locations is what triggers the notice but was not a required part of the notice itself.

Labor Code section 1401(b) provides the notice of a relocation "shall include . . . the elements required by the federal Worker Adjustment and Retraining Notification Act (29 U.S.C. Sec. 2101, et seq.)." The federal counterpart, 29 U.S.C. § 2102, provides only that notice shall be given in certain circumstances. Regulations adopted for the implementation of the federal Act provide, in pertinent part:

/////

7

>    (c) Notice to each representative of affected employees is to contain:
>
>    (1) The name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;
>
>    (2) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
>
>    (3) The expected date of the first separation and the anticipated schedule for making separations;
>
>    (4) The job titles of positions to be affected and the names of the workers currently holding affected jobs.
>
>    The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known.
>
>    (d) Notice to each affected employee who does not have a representative is to be written in language understandable to the employees and is to contain:
>
>    (1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
>
>    (2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
>
>    (3) An indication whether or not bumping rights exist;
>
>    (4) The name and telephone number of a company official to contact for further information.
>
>    The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known.

20 C.F.R. § 639.7. The regulation also provides that "[i]t is not the intent of the regulations[] that errors in the information provided . . . that are minor, inadvertent errors are to be the basis for finding a violation of WARN." 20 C.F.R. § 639.7(a)(4).

Here, the notice given to plaintiffs informed employees their jobs were being moved to the Pleasanton office and would cease to exist at the Gold River site as of May 24,

/////

identified Stephen Donovan as the contact, and gave his fax number.  It did not provide any information about bumping rights.[2]

As defendant points out, however, cases have found substantial compliance with the notice provisions to satisfy the WARN Act.  In *Nagel v. Sykes Enterprises, Inc*., the court found employees were not prejudiced by the employer's failure to notify them about bumping rights.  383 F. Supp. 2d 1180, 1198-99 (D. N.D. 2005).  In this case as well, plaintiffs have presented no evidence of any harm from the notice's failure to include this information, nor explained how bumping rights had any application to a complete relocation of all operations.  They have not shown prejudice, and it is unlikely they could, as they were given the chance to maintain their jobs, albeit in a different location.  Defendant is entitled to summary judgment on this claim as well.

IT IS THEREFORE ORDERED that:

1. AT&T's motion for summary judgment is granted; and

2. This case is closed.

DATED: September 17, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[2] Bumping rights are not defined in the regulations. "Bumping" is the "[d]isplacement of a junior employee's position by a senior employee."  Black's Law Dictionary 190 (7th ed. 1999).